kept no account of the rents and profits. Such a practice would shake an abundance of titles. In the case, likewise, of Lants v. A. and W. Crispe, a rule to redeem was refused, after the mortgagor's acquiescence for six years, under a foreclosure by his own consent. These cases are certainly not stronger than the present, and I think the acquiescence of the cestui que trust in the purchase by the mortgagee, and which is necessarily presumed from his delay, ought now to conclude him. The allowing him to redeem, would establish a precedent much more impolitic, and inconvenient in its consequences, than the violation, in this case, of the rule, that a mortgagee shall *not* purchase. I conclude, therefore, under the circumstances of this case, none of the objections raised are sufficient to justify the setting aside the sale of 1784, and consequently that the decree of the court of chancery ought to be reversed, and that the bill below to redeem, be dismissed with costs.

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

2 Bro. Par.
Casses. 111.

## John B. Church against John Bedient, Gideon Kimberly, and Walter Hubbell.

IN error, on a bill of exceptions to the supreme court, in an action on a policy of assurance upon the brig John, valued at $5000. The vessel had been captured on the 19th of January, acquitted on the 20th of February, and restored to the captain with freight amounting to $2000. He then refitted and repaired her at an expense of only $800, and proceeded on his voyage. On the 5th of March, the assured, being unacquainted with the restoration of the vessel, abandoned; after this, the John arrived, and, on a tender to the underwriters, being refused by them, she was sold by the assured, who, with the money in their hands, brought their suit against the plaintiff for a total loss, averring it by capture. Mr. Justice Radcliff, before whom the cause was tried, charged that as the assured were on the fifth of March, when they abandoned, ignorant of the fact of restoration, which took place on the 20th of February preceding, they had a right to abandon, and claim for a total loss: That being so entitled, they were by law warranted in demanding the whole amount, without deducting any thing for the proceeds of the brig.

On a capture, restoration, and abandonment, the fact of restoration, tho' unknown at the time of abandoning, takes away the right of abandonment and claim for total loss. The assured, under such circumstances, being entitled to recover only according to the final event.

Pendleton for the plaintiff. The questions arising on this case are, whether an abandonment can be made, after a resto-

ration in fact, though the assured be ignorant of such fact at the time of abandonment made ? Secondly, whether, allowing the abandonment could be made, the assured in this case ought not to set off, or deduct from his demand the amount received from the sale of the brig? As to the first question, it is to be considered that a policy of insurance is not a contract against this or that event, but against loss. It engages for nothing more than an indemnification. If the loss be total, the whole sum insured will be the amount of compensation ; if it be but of a part, a partial recompense only can be demanded. From an equitable construction of the instrument, a loss is allowed to be total, when more than half the subject matter of insurance has been destroyed, or the voyage totally defeated. This has given rise to the doctrine of abandonment, on making of which the property saved is relinquished to the underwriter. If a capture takes place, the uncertainty whether the whole will be actually lost or not, admits of abandoning ; but when the property is released, this conclusion fails. When therefore it is in the possession of the owner or his agent, the loss incurred is no more than what is paid for its recovery, or in expenses on it. The result is, that while the capture continues, the right of abandonment exists, and if then made, the underwriter must pay the whole amount, and take the chance of the property being afterwards recovered. But if the property be restored previous to abandoning, then the fact of loss has ceased, and the only claim can be for the injury sustained. It is the fact which gives the right of abandonment : if there is no existing fact, there can be no right ; and if no right, no abandonment. The loss must continue to the time of abandonment made. In Goss v. Withers, 2 Burr. 696, Lord Mansfield is made to declare, " there is no book ancient or modern, which does not " say the assured may, on a capture, abandon and claim as for a " total loss." But on explaining these very words in Hamilton v. Mendez, 2 Burr. 1212, his lordship says " The proposi- " tion was applied to the subject matter," and in pronouncing the judgment of the court in this last case, he lays down these principles : " The plaintiff, upon a policy, can only recover an " indemnity according to the nature of the case *at the time of* " *the action brought*, or (at most) *at the time of his offer to* " *abandon*." In Mills v. Fletcher, Doug. 219, and Cazalet v. S. Barbe, 1 D. & E. 187, these cases are referred to and ac-

knowledged. Roccus, No. 50, cited in Park, 144, is to the same effect. So is 2. Val. 143. Nay, he thinks payment of the money should be the only criterion. In M'Masters v. Shoolbred, and Furneaux v. Bradley, Park, 166, the same doctrine is maintained. The right of abandonment cannot depend on an erroneous opinion. For the belief of a fact to exist, when that fact does not exist, can never give a right against the truth of the case. It is the final event which ought to regulate ; and if on that it proves a partial loss, the recovery cannot be for a total. On the second point, if the abandonment is valid, the money received by the assured must belong to the underwriter, and be an extinguishment of the defendants' demand to the amount of the sum received. For if insurance is a contract of indemnity respecting a particular thing, and the produce of that thing be received by the underwritten, the difference between the produce received and the value insured, is all the injury that can have been sustained. In Pringle v. Hartley, 3 Atk. 195, it is laid down that the value saved, if in the hands of the assured, must be deducted from the recovery on the policy ; but if none has come to his hands, the jury cannot take any notice of it. It follows therefore that what has come to his hands, they must notice.

Henry and Caines contra. The effect of the argument on the first point is to prove, that, though an abandonment has been made instantly on the knowledge of a capture, yet if at the time of abandoning there has been a restoration, it does, though unknown, avoid the abandonment, and the assured can recover only for a partial loss. An abandonment, in its very nature, contemplates restoration or recovery. When all is gone, an abandonment is an absurdity*, and therefore in cases of absolute total losses, an action may be brought for a total loss without abandoning. It is singular that the existence of that, on the supposition of which the whole doctrine of abandonment is founded, should take away the right to abandon. This is to make the cause destroy the effect. Abandonment is the exercised right given to the insured by his policy. It is his exercised right, because not obliged to make it. Marsh. 511. 513. On the happening of the accident insured against, he is entitled to exercise this right. The contract of the underwriter is to indemnify against certain perils and losses, of which capture is one. The nature and effect of capture, is to induce a primâ facie

ALBANY, 1804.

J. B. Church, v. John Bedient and others.

\* Camberling v. M'Call, 2 Dalt. 280.

ALBANY,
1804.

J. B. Church,
v.
John Bedient
and others.

total loss, and enable the assured to recover for such.   Marsh. 483, Goss v. Withers. 2 Burr. 696. This arises, not only from the words of the contract, but the reason of the thing; for, on a capture, all the dominion and power of the assured over the object of his insurance is gone.   The spes recuperandi does not suspend the right to demand for a total loss, and complete justice is done by putting the underwriter in the place of his insured.   Per Ld. Mansfield, 2 Burr. 697.   That a restoration, prior to an abandonment, takes away the right to abandon, proceeds on the idea of restoration constituting a part of the contract.   This is not so.   The contract is against the happening of certain events.   On the taking place of any one of these, the contract is broken, and on the breach arises the right of the assured.   To argue that a fact not mentioned shall heal this breach, is to say that a contract, broken on an event contracted against, shall be restored by an event not contracted for; that what is expressed, shall be controlled and annulled by what is not expressed, and this in subversion of the maxim of de non apparentibus, et de non existentibus eadem est ratio.   Capture gives the right to abandon; all that is required is, that it be asserted by the assured speedily, and so soon as he receives the information of his loss.   Mitchell v. Edie, 1 D. & E. 608. Marsh. 510, 11, 12.   Alwood v. Henkle, ibid. 513.   When thus asserted, it has relation to the period when the accident happened.   Marsh. 519.   Without this construction, the right of abandonment would be perfectly illusory.   Suppose a capture in the East-Indies, and the vessel carried into Calcutta. Six months may elapse before information of the event is received.   Must another six months pass over before the assured can be certain of his right?   It is the capture, or casus, which gives it him.   Election and notice are assertions of that right, which render it vested in him, and absolutely change the property to the assurer, whose agent the assured from that instant becomes.   The effect of election, as to the vesting of rights, is not confined to cases of insurance; it is to be traced in every part of our law.   If a contract be dependent on an agreement, and the party for whom intended disagree, it can neverafter be affirmed.   Whelpdale's Case, 5 Rep. 119.   For where a right is vested, nothing but the act of the party can devest it. If A. is in execution at the suit of B. and I. S. desires B. to let A. go at large, and he will satisfy the debt, to which B.

ALBANY,
1804.

J. B. Church,
v.
John Bedient
and others.

agrees; though I. S. before any thing done in pursuance of this promise and agreement, comes to B. and tells him, that he revokes his promise, and that he will not stand to it; yet such revocation cannot be pleaded in bar to the action. 1 Roll. Abr. 32. The reasoning is, that, by the election to accept the offer of I. S. a complete right vested in B. on the contract of I. S. So here, the contract of the insurer is for a certain sum, to pay on a certain event, if the insured elect to demand. On this election made, every ingredient for a perfect vested right occurred. There was the consideration, in the premium; the promise, in the contract; the breach, on the accident; the right, on the election duly noticed. On the sacredness of vested rights, those of property in a great measure depend. A contingent remainder may be destroyed whilst contingent; but the instant it vests, the act of the party is necessary to affect it. After breach of the condition of a bond, the tender of principal and interest, and refusal by the obligee, cannot, by the common law, be pleaded in bar to the action. Underhill v. Mathews. Bull. N. P. 171. Because the breach vested the right. The only restriction of the right to abandon is, " that when infor-" mation of the loss reaches the assured, they must make " their election, whether they will abandon or not." Pr. Buller, J. in Mitchell v. Edie. Hamilton v. Mendes proves only that the assured cannot abandon, when the information of capture is accompanied with information of restitution and safety. The case was nothing more than an equitable exposition of the contract of insurance, made in the same spirit as that which influenced our legislature in the act for the * amendment of the law. For, as this was passed to soften the rigour of the common law on a breach of the condition in a bond, so the judgment in that, was to temper the strictness of legal construction on policies of insurance, in cases exactly similar, and is no further applicable. It is a mitigation of strict insurance law; it qualifies the right by the knowledge of the fact of restitution. If the insured, at the time of abandoning, is ignorant of any fact that can restrain or qualify his election, it must be considered as made in pursuance of the right arising from the capture. To test the right to abandon, by the facts in the knowledge of the assured, when the abandonment is made, is the best rule. First, from the nature of the right. It is to transfer the property to the insurer for its value, that he, as the insured

* 1 Rev. Laws, 349.

E

ALBANY,
1804.

J. B. Church,
v.
John Bedient
and others.

has lost his dominion over it, might pursue his own course for its recovery, and not be liable to be called on for average losses incurred by the conduct of another. Secondly, from its end. It is to encourage commerce; to enable the party, without any incumbrance from the difficulty of recovery, to be, at the end of thirty days after proof of loss, in possession of his funds, and employ them in other mercantile adventures. Thirdly, this end is defeated, if any hope be left in the insurer to convert, by delaying to acquiesce, the total into a partial loss. If the facts known at the time of abandonment, are not made the criterion of the right to abandon, advantages are given to the insurer over the insured. The latter is bound to make his election immediately; the former, after delay, and finding the state of the market, would acquiesce or not, according as prudence and interest might dictate. The opinion of Valin, in his 2d vol. pages 143-4, has been cited as to the effect of subsequent events, on a prior abandonment; but in the notes to a former page in the same volume, he himself cites a French decision, to the contrary of what he lays down. Emerigon, a weightier and more recent authority, in his 2d vol. ch. 17, sec. 6, answers the points insisted on by Valin, and is clearly against them. Where a person has been legally authorized to act, what he does in virtue of that authority, though after it has determined, cannot, if bona fide, and without knowledge of the determination, be on that account impeached. A conveyance under a letter of attorney revoked, is good, if without notice of revocation. To permit, in the present case, the subsequent fact of restitution to invalidate the abandonment, will be to affect with notice when a want of knowledge is confessed. The state of things at the time of suit brought, has been mentioned by lord Mansfield, as showing it must influence, from analogy to the cases of actions for waste, and against sureties. In the first instance relied on, the repairing before suit brought, is a bar, because there must be a view to judge of the waste, which, by the reparation, is rendered impossible. 5 Rep. 119, Whelpdale's case. But even then it must be specially pleaded. 1 Inst. 282. With regard to suits against sureties, the casus fœderis is indemnity alone. But this very point relied on in the argument of this day, by the opposite counsel, was urged and decided in the case of Storey v. Brown, cited in 5 Bro. Pa. Ca. 139, in notis. The vessel was insured to Gibraltar, for

which place she was chartered. She arrived there, was captured, proceeded against, and restored to the captain, who went on another voyage in her. In an action against the underwriter, he relied on there having been no total loss, and the restoration to the captain as the agent of the insured, and by him sent on another voyage. But it was answered that the capture at Gibraltar was a breach of the policy, and the plaintiff had judgment for a total loss. After capture, the master is the agent of the underwriter; a restoration to him is therefore a delivery to the underwriter, and this can never defeat a right of the underwritten. The same point was determined in the supreme court of this state, in the case of Murray v. United Insurance Company; and in Slocum and Burling against the same, it was thought so clear, that the counsel for the defendant did not attempt to argue it. In this last case, the vessel was in port when the action was brought. On the second point, we do not deny that the amount of the proceeds of the vessel belongs to the plaintiff, nor that the defendants are trustees for him; but under a plea of the general issue he can have no advantage of it. Under that, nothing can be received in evidence but payment, Bull. N. P. 152-3, unless notice of set-off had been given under the statute.

Harison in reply. The engagement of the contract of insurance, is not to pay the full amount of the policy on the happening of any one of the events contracted against. It is to indemnify for the damage of that occurrence. Were it otherwise, there could be no partial losses. It is not therefore correct to say, whenever an accident happens, there is a vested right to claim for a total loss; for the question instantly arises, what is the extent of the injury in consequence of the accident? Most certainly, when there is a calamity which creates a total loss, there is a breach which gives that vested right insisted on. But the question on every accident is, is it an average or total loss? and this is always a subject of legal consideration. Whatever does not go to the total destruction of the voyage, is an average loss. Marsh. 506. Thus, temporary detentions and repairs are average losses, and on payment of the expenses incurred, the contract is complied with. Detention, and capture, as a species of detention, may be total losses, but then they are only technically so, and when they no longer continue, cannot be so considered by the insured. He cannot, when this artificial loss is done

ALBANY,
1804.

J. B. Church,
v.
John Bedient
and others.

away, act upon it as a total loss which abides for ever, and abandon by force of the casus, when the casus is passed. The right of abandonment, in cases of technical loss, must depend on the fact of its existing when the abandonment is made. This doctrine cannot be inconvenient in its application; if any considerable delay take place by the capture, it will always furnish time to abandon whilst it lasts. On the contrary, if every little interruption is to enable the assured to turn the loss on the underwriter, it will open a wide door to fraudulent practice. The cases in Great Britain, and even in the supreme court, are not authority here; for, it is against that very authority we now apply. This is the highest branch of our judicature, and as the point has never before been here agitated, it is open for determination. In making it, the English books furnish but few decisions; for the first case on the subject of abandonment, is that of Goss v. Withers, in 1757. It however confirms our positions, and expressly lays down, that " no capture by the enemy can be so total a loss as to leave no " possibility of recovery." The authorities adduced by the associate counsel who opened this case, all show the loss must continue to the time of abandoning, and perhaps to that of action. The case from Brown's Par. Rep. was on a wager policy *, and in them, as there is no interest, there cannot be any abandonment. The mere accident, therefore, on a wager policy, gives that vested right which has been so strongly insisted on. Pringle v. Hartley, is decisive on the second point.

* It does not appear so from the case, unless the words "valued at the "sum insured," will create a wager policy, for which neither in Park nor Marshall do I find an authority.

The case of Hallet v. Peyton, standing next in order, and embracing the same point as to abandonment, the court declined pronouncing judgment till that should be argued.

## Richard S. Hallett v. Henry Peyton.

S. P. as the preceding case.

THIS case also came before the court on a bill of exceptions. The points relied on were, 1st, That the seal of a foreign vice admiralty court was not in itself any evidence; but, to make it so, required testimony on oath authenticating both the seal and the signature of the judge. 2d, That, of the certificate of registry, parol testimony could not be received, it being, under the act of congress, a record. The third was as to abandonment,